## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**STEPHEN ALLEN ET AL.**                    **CIVIL ACTION**

**VERSUS**                                  **NO: 11-1571**

**ENTERGY OPERATIONS INC.**                 **SECTION: "H"(1)**

### ORDER AND REASONS

Before the Court are Cross-Motions for Summary Judgment on the issue of the classification of Plaintiffs (Docs. 67, 78), on the issue of the application of the fluctuating work week method (Docs. 68, 80), and on the issue of bonus offsets (Docs. 66, 73). In addition, this Court considers Plaintiffs' Motion in Limine (Doc. 121).   For the following reasons, the Cross-Motions for Summary Judgment on the issue of classification are DENIED. Defendant's Motion for Summary Judgment on the issue of the application of the fluctuating work week method is GRANTED IN PART, and Plaintiffs' is DENIED. Defendant's Motion for Summary Judgment on the issue of bonus offsets is GRANTED, and Plaintiffs' is DENIED. Finally, Plaintiffs' Motion in Limine is DENIED.

1

## BACKGROUND

This is a multi-plaintiff action under the Fair Labor Standards Act ("FLSA") in which Plaintiffs allege that Defendant failed to compensate them for overtime hours worked. Plaintiffs are or were employed by Defendant Entergy Operations, Inc. and all held positions as "Security Shift Supervisors" ("SSS") at the Waterford 3 nuclear plant in Killona, Louisiana (the "Plant"). Plaintiffs contend that prior to 2009, security services at the Plant were outsourced to a company that paid Plaintiffs an hourly wage and overtime. In 2009, Defendant opted to move security forces in-house and transformed those positions into exempt, salaried positions that were not entitled to overtime.

Plaintiffs allege that they are entitled to overtime payment under FLSA, while Defendant contends that Plaintiffs are exempted as administrative employees. In cross-motions for summary judgment, each party asks for judgment in its favor on the issue of Plaintiffs' classification. In addition, both parties have filed motions for summary judgment on issues relevant to the calculation of overtime compensation if Plaintiffs are deemed to have been misclassified. Specifically, the parties disagree on the application of the fluctuating workweek method to calculate overtime payments and whether bonuses received by the SSSs as part of the Management Incentive Program should be offset against any overtime due. This Court will address each issue in turn.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1]  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[2]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[3]  "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[4]  Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[5]  "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[6]  "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the

---

[1] Fed. R. Civ. P. 56(c) (2012).

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[3] *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 532 (5th Cir. 1997).

[4] *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[6] *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

3

necessary facts."[7]   Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[8]

## LAW AND ANALYSIS

### I.  Classification

At the outset, the parties dispute whether Plaintiffs should have been paid overtime payments in their positions as SSSs at the Plant.  "Under the FLSA, employers must pay overtime compensation to covered employees who work more than forty hours a week."[9] However, pursuant to section 13(a)(1) of the FLSA, executive, administrative, and professional employees are exempt from this general rule.[10] "An employer claiming an exemption bears the burden of proving its exempt status, and exemptions are to be narrowly construed against the employer."[11]

Defendant argues that Plaintiffs are exempt from overtime payment because they are employees "employed in a bona fide administrative capacity." Plaintiffs rebut that they are first responders and thus excluded from overtime exemption under the terms of FLSA.  Both parties have filed Motions for Summary Judgment on this issue.

FLSA states that:

The term "employee employed in a bona fide administrative capacity" in section 13(a)(1) of the Act shall mean any employee:

---

[7] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

[8] *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

[9] *Cleveland v. City of Elmendorf, Tex.*, 388 F.3d 522, 526 (5th Cir. 2004).

[10] 29 U.S.C. § 213; *Moore v. Hannon Food Serv., Inc.*, 317 F.3d 489, 492 (5th Cir. 2003).

[11] *Cleveland*, 388 F.3d at 526.

(1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . ., exclusive of board, lodging or other facilities;

(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.[12]

Accordingly, employees fall under the administrative exemption if their jobs meet those three elements. This Court will consider each element in turn.

### A. Weekly Salary

Plaintiffs do not dispute that they received the requisite $455 weekly salary required to meet the first prong of the administrative capacity exception.

### B. Primary Duty

The final requirements of the administrative capacity exception involve the primary duty of the SSS position.  Defendant must show that the "primary duty" of the SSS position is the "performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" and "includes the exercise of discretion and independent judgment with respect to matters of significance."[13] Plaintiffs argue that they do not qualify for a FLSA exemption because they should be classified as "first responders" under FLSA.  FLSA states that first responders are excluded from being categorized as exempt from overtime.[14]

---

[12] 29 C.F.R. § 541.200.

[13] 29 C.F.R. § 541.200.

[14] 29 C.F.R. § 541.3(b)(1).

Specifically, it states that first responders "do not qualify as exempt administrative employees because their primary duty is not the performance of work directly related to the management or general business operations of the employer or the employer's customers as required."[15]

FLSA provides guidance regarding the interpretation of the term "primary duty," stating that:

> (a) To qualify for exemption under this part, an employee's "primary duty" must be the performance of exempt work. The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.
>
> (b) The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.[16]

---

[15] 29 C.F.R. § 541.3(b)(3).
[16] 29 C.F.R. § 541.700.

This Court must also consider the amount of discretion with which Plaintiffs are allowed to perform their duties. FLSA defines the discretion requirement as follows:

> In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term "matters of significance" refers to the level of importance or consequence of the work performed.[17]

Accordingly, this Court will consider each of these requirements in light of the facts of this case.

### i.    *Relevant Facts*

In order to determine the primary duty and level of discretion of the SSS position, this Court must take a closer look at what the position entails. The structure of the security staff at the Plant as is follows: The staff is led by a Security Manager, followed by a Security Superintendent. Next, several Security Operations Supervisors ("SOS") oversee the SSSs. Finally, the SSSs oversee the security officers.

The security officers are hourly employees responsible for staffing access points in the Plant, searching vehicles and persons, patrolling, and providing support in an emergency.  The SSSs are responsible for monitoring and supervising the security officers.  Both the security officers and the SSSs work 12-hour day or night shifts.  The security force at the Plant is organized into four teams, each include about five or six SSSs and twenty security officers.

---

[17] 29 C.F.R. § 541.202.

The teams rotate twelve-hour shifts, with one team present at all times, day or night.  The Security Manager, Security Superintendent, and SOSs work day shifts Monday through Thursday with no set night hours.

The SSSs may hold one of several positions, including Central Alarm Station ("CAS"), Secondary Alarm Station "(SAS"), Security Owner Controlled Area ("SOCA"), Response Team Leader ("RTL"), and Protected Area Supervisors/Field Supervisors ("PAS").  Prior to 2012, an SSS would work exclusively in one of these positions.  After this litigation began, the SSSs began rotating between the stations and now work at each position for an equal amount of time.  The SSSs are also often asked to fill in for security officers who are unable to come to work.  In addition, they are asked to fill-in as security officers during lock-outs at other nuclear facilities.

The CAS, SAS, and SOCA positions require the SSSs to man alarm stations and monitor the Plant through video surveillance feed at varying locations throughout the Plant.  They are responsible for assessing an alarm and deciding what action, if any, should be taken.  They are also responsible for scheduling and prioritizing requests for security throughout the Plant.  Defendant alleges that, prior to the implementation of the SOCA position, there was a Lead CAS/SAS position that was responsible for reviewing paperwork, preparing reports, and overseeing the CAS and SAS stations.

The RTL position is the shift leader of the security officers.  It leads roll call, checks qualifications, inventories weapons and ammunition, and monitors personnel at various posts.  The PAS position assists the RTL in scheduling personnel, monitoring security officers at their post, managing equipment, and ensuring policies are properly implemented.

*ii.    Plaintiffs' Argument*

Plaintiffs allege that the SSS position, in conjunction with the security officers, are the first line of defense for the Plant.  They allege that they are a uniformed, armed security force whose primary duty is the defense of the Plant.  Both groups are trained in emergency response, weaponry, and bomb searches.   They are instructed on proper responses to emergency situations. Plaintiffs support their argument that the primary duty of the SSSs is that of a first responder by citing to certain regulations of the Nuclear Regulatory Commission ("NRC"), which require Defendant to staff the Plant with armed responders tasked with the prevention of "radiological sabotage."   The regulations require that the security personnel not be assigned other duties that could interfere with their response and states that their primary duty is to respond to prevent or delay the theft of nuclear material or "radiological sabotage."

Plaintiffs also point to the job descriptions of the varying positions available to the SSSs to show that their primary duty is not administrative. Plaintiffs point out that the primary duty of the CAS/SAS and SOCA positions is to monitor the Plant through continuous surveillance and that an SSS performing this duty is not permitted to leave his or her station until relieved by another person.  Plaintiffs also argue that, although this position requires the SSS to decide how to respond to an alarm and to dispatch security forces, the SSS has little discretion in doing so.  Plaintiffs note that the decisions the SSS makes are highly determined by procedures provided by Entergy and NRC regulations.

In addition, Plaintiffs point out that although the RTL position plays more of an administrative role than the other SSS positions, every decision made in that role is likewise based on policies and procedures provided by Entergy and NRC regulations.  In addition, although each SSS is tasked with checking the qualifications of the security officers assigned to him or her, Plaintiffs allege that no such assignments were made until after the filing of this litigation.

Finally, Plaintiffs point out that they are often asked to fill in for security officers and that during an emergency event at the Plant they would have the same defense responsibilities as the security officers.   Plaintiffs submit evidence that it was at least a weekly occurrence for a SSS to fill-in for a security officer—a position that is paid hourly and eligible for overtime payment.  In addition, the Security Manager stated that the converse is also true—the security officers were sometimes asked to fill in for SSSs that were unable to come to work.

### iii.   *Defendant's Argument*

Defendant paints a substantially different picture of the SSS role at the Plant.  It argues that the primary duty of the SSS position is supervisory. It states that the SSS is the highest ranking security member on site on all weekends and nights and plays an important role in monitoring, supervising, and directing the security officers.  Defendant alleges that Plaintiffs perform a "host of administrative duties, including scheduling, preparing reports, approving overtime and vacation[,] . . . [and] monitoring the Security Officer's qualifications."  It argues that each SSS is responsible for supervising its direct reports and approving of their time entries and qualifications.

10

Defendant alleges that the RTL position provides administrative and managerial oversight for each shift and performs substantial paperwork. It states that the CAS/SAS and SOCA positions are the primary points of contract at the Plant for departments in need of security for certain projects. The SSSs working in that capacity are tasked with scheduling and prioritizing projects that have requested security. Defendant alleges that these positions also have discretion in deciding how to react to alarms—whether to clear it, dispatch a security officer, or direct a security response. Defendant states that the SOCA position also prepares reports on events that occur during his shift, including disciplinary write-ups of security officers. Defendant argues that while protecting the Plant is the primary *goal* of the SSSs, their primary *duty* is to supervise, and therefore, they should be exempt from the FLSA overtime requirement.

As evidenced by the starkly different summaries given by each party in this case, this Court holds that there are material issues of fact regarding what the primary duty of the SSS position entails and what level of discretion, if any, it can utilize in performing those duties. The parties disagree on the amount of time spent doing administrative tasks versus manual tasks, as well as the amount of discretion allowed. Plaintiffs allege that the SSSs merely follow predetermined procedures, while Defendant attests that Plaintiffs have broad discretion in performing their duties. Plaintiffs rebut that Defendant exaggerates their administrative role and that the tasks identified by Defendant are rarely performed or take little time to perform. For example, the parties disagree over what the CAS/SAS position actually entails. Plaintiffs argue the CAS/SAS position solely monitors surveillance; Defendant

11

argues that it is the central point of contact for security through which scheduling, supervising, and dispatching of officers is performed.  The question of the "determination as to whether an employee is exempt under the FLSA is primarily a question of fact."[18]  Although this Court is inclined to find that Plaintiffs have been misclassified,[19] it declines to make such a determination on summary judgment, particularly in light of the significant factual disputes evident by the parties' motions.  Accordingly, the Motions for Summary Judgment on the issue of the Plaintiffs' classification are denied.

## II.  Fluctuating Work Week

In the event that Plaintiffs are determined at trial to have been misclassified, this Court will address the alternative issues on which the parties have moved for summary judgment.  First, Defendant asks this Court to find that if Plaintiffs were misclassified, the fluctuating work week ("FWW") method applies to calculate overtime pay.  Plaintiffs ask this Court to find that it does not.  "The FWW is an employment arrangement in which an employee receives a fixed weekly pay for a fluctuating work schedule with a varying number of hours worked each week."[20]  "Unlike in the standard method, this employee has already been compensated straight time for all hours worked,

---

[18] *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1226 (5th Cir. 1990) (internal quotations and alterations omitted).

[19] *See Banford v. Entergy Nuclear Operations, Inc.*, 74 F.Supp.3d 658, 660 (D. Vt. Feb. 11, 2015).

[20] *Black v. SettlePou, P.C.*, 732 F.3d 492, 496 (5th Cir. 2013).

and so overtime is determined by multiplying all hours over 40 in that workweek by only one half the regular rate for that particular week."[21]

> The FWW method of calculating overtime premiums in a misclassification case is appropriate when the employer and the employee have agreed that the employee will be paid a fixed weekly wage to work fluctuating hours. . . . The question of whether an employer and employee agreed to a fixed weekly wage for fluctuating hours is a question of fact. . . . The parties' initial understanding of the employment arrangement as well as the parties' conduct during the period of employment must both be taken into account in determining whether the parties agreed that the employee would receive a fixed salary as compensation for all hours worked in a week, even though the number of hours may vary each week.[22]

The Fifth Circuit has held that in order to determine if the FWW method applies, the Court must decide whether "the employer and the employee have agreed that the employee will be paid a fixed weekly wage to work fluctuating hours."[23]

Defendant contends that, after its security force was moved in-house, each of the Plaintiffs interviewed and received a formal offer to work as an SSS.  It contends that at that time the Security Manager, Scott Anders, met with each of the Plaintiffs individually, reviewed the offer letter, explained the salary and Management Incentive Program ("MIP"), and told them they would no longer receive overtime payment.  Defendant alleges that fifteen of the nineteen remaining Plaintiffs[24] admitted in their deposition that they

---

[21] *Ramos v. Al-Bataineh*, No. 11-0380, 2013 WL 10372446, at *6 (S.D. Tex. Nov. 1, 2013) aff'd, 599 F. App'x 548 (5th Cir. 2015).

[22] *Id.*

[23] *Black v. SettlePou, P.C.*, 732 F.3d 492, 498 (5th Cir. 2013).

[24] Two of the Plaintiffs have reached a settlement with Defendant.

13

understood that they would be paid a fixed salary to work fluctuating hours.[25] Defendant's Motion details the admissions of each Plaintiff and contends that these admissions are all that is required for the application of the FWW method.

Plaintiffs rebut that they understood the SSS position to require a 36/48 hour biweekly schedule with minimal overtime. They allege, however, that after joining Entergy they were subjected to abusive, unreasonable overtime and were required to be on-call on their days off. They contend that the FWW method should not be applied to calculate overtime because there was no mutual understanding between Plaintiffs and Defendant regarding the requirements of the SSS position.

In *Ranson v. M. Patel Enterprises*, the Fifth Circuit reversed the lower court, holding that the FWW method should be applied because the plaintiffs, managers at a Party City, had agreed to a set salary for fluctuating hours.[26] In making this determination, the court relied on testimony from the plaintiffs in which they admitted that they understood that they would receive a fixed salary and would work a "minimum of 55 hours" per week.[27] The plaintiffs also admitted understanding that their hours would fluctuate from week to week and that they would work a "flexible schedule."[28] The court stated that the FWW method should be used when testimony shows that the "employees

---

[25] *Ransom v. M. Patel Enterprises, Inc.*, 734 F.3d 377, 383 (5th Cir. 2013).
[26] *Id.*
[27] *Id.*
[28] *Id.*

knew their hours would fluctuate and that their salary would not increase or decrease with those fluctuations."[29]

The understanding of the plaintiffs in *Ranson* is not unlike the understanding of Plaintiffs here. Defendant has provided excerpts of testimony from fifteen of the nineteen remaining Plaintiffs in which they admit to understanding that they would work a schedule that fluctuated between 36 and 48 hours each week. They also admit to understanding that they would not receive additional overtime payments for hours worked in excess of 40 hours per week. This understanding fits squarely within the requirements necessary for the application of the FWW method. The testimony provided by Defendant reveals that it and the fifteen Plaintiffs agreed that they would be paid a fixed wage for fluctuating hours. It is clear that the parties intended for Plaintiffs' overtime payment to be built into their fixed salary and thus the FWW method is appropriate. It appears that Plaintiffs' primary complaint is not that they were asked to work overtime—but that the overtime was excessive. The reasonableness of the hours worked, however, is not an element in applying the FWW method

Defendant's motion also discussed the applicability of the FWW calculation to the remaining four Plaintiffs who testified that they did not understand that they would not receive overtime pay when they accepted the SSS position. Defendant contends that the testimony of these four plaintiffs is not credible in light of documentary evidence and the testimony of the other

---

[29] *Id.*

plaintiffs. This Court will address the testimony of each of the remaining Plaintiffs in turn.

   *i.   Stephen Allen*

At his deposition, Plaintiff Stephen Allen testified that he understood that he would work a 36/48 hour biweekly schedule for a salary. He stated, however, that he did not understand that he would not also receive overtime payment for hours worked in excess of 40. He also testified that after receiving his first paycheck he approached Mr. Anders regarding the lack of overtime payment, and Mr. Anders explained that he would not be receiving overtime. Mr. Allen alleges that, at this point, he understood that he would be receiving only a fixed salary for fluctuating hours. Mr. Anders testified, and other Plaintiffs have confirmed, however, that he relayed to each Plaintiff that they would not be receiving overtime payments at the time that they accepted the position. These contradicting statements are a material issue of fact, which this Court is not prepared to resolve. Accordingly, this Court declines to grant summary judgment to either party on the issue of whether the FWW method should be used in calculating Mr. Allen's overtime compensation if he is determined to have been misclassified.

   *ii.   Ernest Brown*

Next, Plaintiff Ernest Brown testified that he understood that he would be receiving a salary and that he would be working a fluctuating 36/48 biweekly schedule. He also testified, however, that he believed he would be compensated for the hours worked over 40 by receiving "a day off or something like that." The Fifth Circuit requires only that there was an understanding that the employee would receive a fixed salary for a fluctuating schedule. The

fact that Mr. Brown believed he might receive some other non-monetary benefit is inapposite. Accordingly, this Court holds that the FWW method should be utilized in calculating overtime compensation if he is found to have been misclassified.

### iii.  Anthony Smith

Next, Plaintiff Anthony Smith testified that, although no one told him he would receive overtime payments, he assumed he would because Mr. Anders informed him that "nothing was going to change" when Entergy moved its security operations in-house. He alleges, therefore, that he understood that he would be working a 36/48 biweekly schedule but believed he would still be paid on an hourly basis. He testified that after receiving his first and second paychecks, he understood that he would not be receiving overtime. This testimony obviously contradicts that of Mr. Anders, and therefore, this Court declines to resolve this issue of fact. Accordingly, this Court denies summary judgment to both parties on the issue of whether the FWW method applies to Mr. Smith.

### iv.  Picola Williams

Finally, Plaintiff Picola Williams testified that she understood she would be working a fluctuating schedule for a salary, however, she did not understand that she would not also receive additional compensation for hours worked in excess of 40. She also testified, however, that no one told her she would be receiving overtime but that she just assumed that nothing would change when Entergy moved its security force in-house. She did not inquire as to overtime payment until after beginning the job with Entergy. This is counter to Mr. Ander's testimony in which he states that he communicated to

17

each Plaintiff that they would no longer be receiving overtime payment. Accordingly, there is a material issue of fact as to whether Ms. Williams understood she would be receiving a fixed salary for a fluctuating schedule. Accordingly, this Court declines to award summary judgment on this issue to either party.

In conclusion, this Court grants summary judgment to Defendant on the issue of the application of the FWW method to the calculation of overtime compensation for all Plaintiffs except Stephen Allen, Anthony Smith, and Picola Williams. Although the Court finds it highly unlikely that Mr. Anders conveyed a different message to the remaining three Plaintiffs and that they were not aware that they would not be receiving overtime, the Court declines to grant summary judgment on the issue of whether the FWW method applies to those Plaintiffs in light of the material issues of fact identified.

### III.   Bonus Offset

The parties next dispute whether any bonuses received by Plaintiffs under the MIP should be offset against any overtime compensation that is deemed to be owed. The MIP is Defendant's incentive bonus program, which is available only to certain management-level employees. Defendant contends that it should be permitted to offset any amounts paid to Plaintiffs under the MIP against any overtime compensation that it owes. Plaintiffs argue that the bonuses awarded under the MIP were discretionary, and FLSA does not allow offsets or credits for bonuses awarded on a discretionary basis. Defendant rebuts that, if Plaintiffs were misclassified, then they were not eligible to

receive bonuses under the MIP, and thus, the bonuses were given in error and should be offset. This Court will consider each argument in turn.

Plaintiffs contend, and Defendant does not dispute, that the MIP payments were discretionary, subject to many factors, not guaranteed by working overtime, and not awarded annually. Plaintiffs argue that under FLSA, an employer can only receive credits to offset unpaid overtime for (1) regular wages previously paid to the employer and (2) "extra compensation."[30] FLSA specifically defines "extra compensation" and that definition does not include discretionary bonuses not based on the number of hours worked. Indeed, FLSA expressly states that neither "extra compensation" nor "regular wages" includes sums paid if "both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer."[31] Plaintiffs argue that therefore Defendant is not entitled to offset the MIP payments to Plaintiffs against any unpaid overtime compensation that may be owed to them.

This Court holds, however, that Plaintiffs' argument fails to recognize an important distinction. The FLSA provisions cited by Plaintiffs do not address payments that were made in error. Indeed, even the cases cited by Plaintiffs are easily distinguishable because they do not involve plaintiffs who received payments to which they were not entitled.[32] As Defendant argues, if Plaintiffs

---

[30] 29 U.S.C. § 207.

[31] *Id.*

[32] *See Brock v. Two R Drilling Co.*, 772 F.2d 1199 (5th Cir. 1985) on reh'g, 789 F.2d 1177 (5th Cir. 1986) (discussing incentive for working certain overtime); *Duplessis v. Delta Gas, Inc.*, 640 F. Supp. 891, 897 (E.D. La. 1986) (discussing payments for non-productive time such as sick days and bonuses); *Martin v. PepsiAmericas, Inc.,* 628 F.3d 738, 742 (5th Cir. 2010) (discussing severance payment); *Brennan v. Heard*, 491 F.2d 1, 3 (5th Cir. 1974)

19

are deemed to have been misclassified then they were not entitled to MIP payments and thus those bonuses were received erroneously. Plaintiffs were only eligible for MIP payments because they were classified as exempt management employees, who were not eligible for overtime compensation. The MIP program expressly requires that MIP bonuses be returned if employees receive overtime compensation.[33]

Louisiana Civil Code article 2299 states that "[a] person who has received a payment or a thing not owed to him is bound to restore it to the person from whom he received it."[34] The Civil Code further states that:

> Compensation takes place by operation of law when two persons owe to each other sums of money or quantities of fungible things identical in kind, and these sums or quantities are liquidated and presently due. In such a case, compensation extinguishes both obligations to the extent of the lesser amount.[35]

Accordingly, pursuant to Louisiana law, if the MIP payments to Plaintiffs were made in error, they must be returned. The set-off of that amount and any amount owed to Plaintiffs in unpaid overtime will then occur by operation of law.

At least one other court has previously reached such a conclusion in the FLSA context. In *Monroe Firefighters Assn v. City of Monroe*, the defendant, the City of Monroe, filed a counterclaim in an unpaid overtime FLSA action

---

(disallowing set-off "against the amount due in back pay for the value of goods, including gas and supplies from the company store, furnished by [employer] to his employees").

[33] *See* Doc. 73-2.

[34] La. Civ. Code. art. 2299.

[35] La. Civ. Code. art. 1893.

against it alleging that the firefighter-plaintiffs had been overpaid for years due to miscalculations.[36] Defendant alleged that it was owed this money as payment of a thing not due under Louisiana law.[37]  The overpayments included unearned overtime payment, an additional 2% longevity payment, and additional half-time pay.[38]   Analyzing Fifth Circuit precedent, the district court in the Western District of Louisiana held that "state law may permit set-offs from amounts due to FLSA plaintiffs."[39] The court relied on Louisiana Civil Code article 2299 to hold that the defendant was entitled to set-off for overtime compensation owed to an individual plaintiff of any unearned payment made to that individual plaintiff.[40]

This Court follows that analysis in this case.  To allow Plaintiffs to recover overtime payments and retain MIP payments to which they would not have been entitled would be inequitable at best.  FLSA is intended to make plaintiffs whole and avoid a windfall.[41]  Failure to offset the erroneous bonuses against any overtime due would result in a windfall to Plaintiffs, and summary judgment is therefore granted in Defendant's favor.  This Court holds that

---

[36] *Monroe Firefighters Ass'n v. City of Monroe*, No. 06-CV-1092, 2009 WL 916272, at *1 (W.D. La. Mar. 31, 2009).

[37] *Id.*

[38] *Id.*

[39] *Id.* at 12.

[40] *Id.* at 13.

[41] *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945) (stating that FLSA was implemented to protect employees working at the minimum wage.); *Lupien v. City of Marlborough*, 387 F.3d 83, 90 (1st Cir. 2004) (stating that FLSA is designed to make employees whole, not award "a windfall."); *see also Stephens v. C.I.T. Group/Equip. Fin., Inc.*, 955 F.2d 1023, 1028 (5th Cir. 1992) ("Courts uniformly offset interim earnings from back pay awards in order to make the plaintiff whole, yet avoid windfall awards.").

Defendant is entitled to offset amounts paid to any Plaintiff in MIP bonuses against the amount owed to that Plaintiff in overtime.

## IV.   Plaintiffs' Motion in Limine

Finally, Plaintiffs have asked this Court to preclude Defendant from introducing evidence of its entitlement to an offset of MIP bonuses because of its failure to file a counterclaim for the repayment of these amounts.  Plaintiffs correctly state that Defendant did not bring a counterclaim for the reimbursement of MIP bonuses but rather included its argument for setoff as an affirmative defense.  Plaintiffs point out that the defendant in *Monroe Firefighters*, on which Defendant relies, brought a counterclaim for repayment of certain inadvertent overpayments.  Plaintiffs allege that Defendant's failure to bring a counterclaim here should prevent it from proceeding with this argument or entering evidence in its support.

This Court disagrees.  As Defendant points out, it "has not made an independent claim for relief: it has asserted a claim that exists if and only if Plaintiffs are determined to have been misclassified. . . . If the Plaintiffs are found to have been properly classified, [Defendant's] offset defense would be moot."  This Court does not read Defendant's arguments regarding bonus offset to attempt to assert a counterclaim.  Defendant properly included this argument as an affirmative defense.  Indeed, Plaintiffs' distinction is one without a difference as set-off "takes place by operation of law."[42]  In addition, this motion is mooted by this Court's prior holding that Defendant is entitled to bonus offsets.  Accordingly, Plaintiffs' Motion in Limine is denied.

---

[42] La. Civ. Code. art. 1893.

## CONCLUSION

For the foregoing reasons, the Cross-Motions for Summary Judgment on the issue of the classification are DENIED. Defendant's Motion for Summary Judgment on the issue of the application of the fluctuating work week method is GRANTED IN PART, and Plaintiffs' is DENIED.   Finally, Defendant's Motion for Summary Judgment on the issue of bonus offsets is GRANTED, and Plaintiffs' is DENIED. Plaintiffs' Motion in Limine is DENIED.

Further, pursuant to 28 U.S.C. 1292(b), this Court declares the issue of whether Defendant is entitled to bonus offsets ripe for an interlocutory appeal. This Court finds that this issue is one to which there could be substantial grounds for difference of opinion and the resolution of which will advance settlement of this matter.

New Orleans, Louisiana this 16th day of February, 2016.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**